IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal No. 20-CR-10036 |
| | ) | |
| DAKOTA FLINT, | ) | |
| Defendant. | ) | |

## SENTENCING COMMENTARY AND MOTION FOR DOWNWARD VARIANCE

Defendant, DAKOTA FLINT, by and through his Attorney, John P. Lonergan, comes before this Court for sentencing after having pled guilty to Count two of the Indictment, a charge of Possession of Child Pornography, in violation of 18 U.S.C. §2252(a)(5)(B).

As indicated in the revised Presentence Investigation Report ("PSR"), filed by the probation office, the **Total Offense Level** for the Defendant is 35. See PSR ¶ 69. Defendant's **Total Criminal History Score** places him in Category I. See PSR ¶74. Defendant's sentencing guideline range is 168-210 months BOP.

The advisory guideline range is but one factor to be considered in determining the sentence of a defendant so that it is sufficient, but not greater than necessary. See <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007) (quoting 18 U.S.S.G. § 3553(a)). The Court shall consider the following factors when determining a particular sentence:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The purpose and need for a sentence imposed;

3) The kinds of sentences available;

1

4) The advisory guideline range;

5) Any policy statements issued by the Sentencing Commission;

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to victims of the offense

18 U.S.S.G. § 3553(a).

After these considerations under § 3553(a), as well as other factors unique to the Defendant, including his entire background and character, <u>not</u> just the negatives characteristics and negative events reflected in his criminal history, the Court can conclude that a sentence below the advisory guidelines is an appropriate sentence for Defendant. Additionally, not only are the Guidelines not mandatory, the sentencing court is not "to presume that a sentence within the applicable Guideline range is reasonable." <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009).

MOTION FOR DOWNWARD VARIANCE

a. <u>Outmoded Sentencing Scheme in Non-Production Child Pornography Cases</u>

In 2012 the United States Sentencing Commission (USSC) completed a study and issued a report and an Executive Summary of that report. *United States Sentencing Commission, Executive Summary — Report to the Congress: Federal Child Pornography Offenses. USSC (2012).* https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Executive_Summary.pdf

The report concludes that as a result of recent changes (as of 2012) in the computer and Internet technologies that the typical non-production offenders use, the existing sentencing

scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability. *Id.*

The report found that non-production child pornography offenses have become almost exclusively Internet-enabled crimes; the typical offender today uses modern Internet-based technologies such as peer-to-peer ("P2P") file-sharing programs that were just emerging only a decade ago and that now facilitate large collections of child pornography. The typical offender's collection not only has grown in volume but also contains a wide variety of graphic sexual images (including images of very young victims), which are now readily available on the Internet. *Id,* at ii-iii.

As a result, four of the of six sentencing enhancements in §2G2.2 — those relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability. *Id.* These enhancements originally were promulgated in an earlier technological era, when such factors better served to distinguish among offenders. Indeed, most of the enhancements in §2G2.2, in their current or antecedent versions, were promulgated when the typical offender obtained child pornography in printed form in the mail. *Id*, at ii-iii.

In particular, four of the six enhancements in §2G2.2(b) — together accounting for 13 offense levels — now apply to the typical non-production offender. In fiscal year 2010, §2G2.2(b)(2) (images depicting pre-pubescent minors) applied in 96.1 percent of cases; §2G2.2(b)(4) (sado-masochistic images) applied in 74.2 percent of cases; §2G2.2(b)(6) (use of a computer) applied in 96.2 percent of cases; and §2G2.2(b)(7) (images table) applied in 96.9 percent of cases. Thus, these sentencing enhancements that originally were intended to provide

additional proportional punishment for aggravating conduct now routinely apply in 90% of non-production cases. *Id,* at xi.

In fact, of all of those enhancements judged to be outdated by technological advancements, all apply in Mr. Flint's PSR for a grand total increase in offense level of +10 points:

- +2 points- The defendant received and possessed images of prepubescent minor males and females. 2G2.2(b)(2). PSR, Paragraph 56.
- +4 points- The defendant possessed images/videos of sado-masochistic nature. 2G2.2 (b)(4)(A). PSR, Paragraph 58.
- +2 points- If the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material or for accessing with intent to view the material. 2G2.2(b)(6). PSR Paragraph 60.
- +2 points- The defendant possessed 53 videos and 44 images of child pornography. Each video clip shall be considered 75 images. Therefore, Defendant is responsible for 4,019 images of child pornography. 2G2.2(b)(7)(A). PSR Paragraph 61.

Enhancements in sections (b)(2), (b)(4) and (b)(7) are focused on the content of the specific images (age of victim and sado-masochistic images) and the specific number of images.

As noted by the Commission in its 2021 Report, those enhancements "relating to computer usage and the type and volume of images possessed by offenders, which together account for 13 offense levels — now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." *Id*, at ii. In summary, relying on the specific content and number of images is not an accurate measurement when differentiating between offenders in terms of culpability.

The most obviously outdated mode of determining culpability is the use of computer and internet technology itself under 2G2.2(b)(6).

2G2.2(b)(6) is so outdated that the U.S. Department of Justice agrees that it should be removed altogether as a Specific Offense Characteristic (SOC). "*Use of a computer*. Because the

4

vast majority of child pornography offense now involve the use of a computer, this SOC should be eliminated and replaced by others, …which better distinguish between classes of offenders." U.S. Department of Justice letter to Honorable Patti B. Saris (March 5, 2013), attached hereto, marked as Defendant's Exhibit 1 and incorporated by reference.

Finally, the Commission specifically mentions the prevalence of the use of P2P networks for obtaining and distributing child pornography. The most common manner of distribution was a P2P file-sharing program.

> "There have been dramatic technological changes related to computers and the Internet in the past decade, such as the ascendance of P2P file-sharing programs, which have changed the way that typical offenders today receive and distribute child pornography. The Commission's special research project of 1,654 fiscal year 2010 §2G2.2 cases found that nearly two-thirds of offenders (65.4%) distributed child pornography to others. The most common manner of distribution was a P2P file-sharing program.
>
> Child pornography offenders vary widely in their technological sophistication. Many are relatively unsophisticated "entry-level" offenders who use readily available technologies such as "open" P2P filesharing programs to receive and/or distribute child pornography in an indiscriminate manner. Other offenders, however, use their technological expertise to create private and secure trading "communities" and to evade, and help others evade, detection by law enforcement." *Id*, at viii. (2012)

b. <u>USSC Recommendations for updating the child pornography sentencing scheme and Potential Amendments to the Sentencing Guidelines.</u>

As reflected in the report, the Commission recommends that the following three categories of offender behavior encompass the primary factors that should be considered in imposing sentences in §2G2.2 cases:

> (i) the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the age of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technologies);

(ii) the degree of an offender's involvement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and

(iii) whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense.

The current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness. As a result, penalty ranges are too severe for some offenders and too lenient for other offenders. The guideline thus should be revised to more fully account for these three factors and thereby provide for more proportionate punishments.

If the sentencing court decides that the Commission's findings are well founded and chooses to minimize application of the enhancements it would reduce the guideline range from a total offense level of 35, Criminal History Category I, guideline range of 168-210 months to offense level 25, criminal history category I with a guideline range of 57-71 months, or perhaps some figure in between.

c. Autism Spectrum Disorder

1. In consideration of the Nature and Circumstances of the Offense, the Asperger's Syndrome Diagnosis is a Mitigating factor.

As mentioned previously, Dakota has been diagnosed with Asperger's Disorder. The diagnosis is a significant consideration in evaluating the nature and circumstances of the offense. The diagnosis explains many social challenges Dakota has faced throughout his life, and also provides a context and explanation for some of the behavior in this offense. The diagnosis also explains why Dakota perhaps did not sully grasp the seriousness of his conduct or the resulting consequences.

6

Over the course of his life Dakota has received minimal intervention and treatment for his condition. The diagnosis came late in his childhood and he did not receive the full array of services that might otherwise have been made available in other circumstances. Often those diagnosed with Autism Spectrum Disorder possess an otherwise natural inclination to follow the rules and directions from others as evidenced by Dakota's lack of criminal history and from the description of those closest to him.

Prior to his arrest on this offense, Dakota's parents were completely unaware of his behaviors or even any sexual interest in others overall. Prior to his arrest Dakota resided with his parents and was completely dependent on them for financial and social support. Dakota resided with his parents because he is not capable of living alone.

Dakota's parents are instrumental in his life. They are now aware of the concerning conduct and would provide strong familial support to facilitate Dakotas addressing his disorder. Dakota will be returning to his parents' home upon his release and they will closely monitor his conduct and participation in recommended treatment.

2. <u>The Sentence imposed must reflect the Seriousness of the offense, promote respect for the law, and provide just punishment, 18 U.S.C. 3553(a)(2)(A).</u>

For an offender with Asperger's Syndrome, their understanding "of the consequences of their conduct will vary based on the extent of their socialization." Brian Waldrup, <u>Mindblindness: Three nations Approach the Special Case of the Criminally Accused Individual with Asperger's Syndrome</u>, 27 Penn St. Int'l L. Rev. 959, 988 (2009).

Dakota's mother has described the challenges that Dakota has faced with socialization over the course of his development.

d. <u>Vulnerability of Defendant while in Prison</u>

Defendant moves for a downward departure based upon defendant's extreme vulnerability in prison. Specifically, defendant is physically vulnerable, he is 6'2" and weights approximately 120 pounds. He is visibly frail and as such an easy target for other inmates.

Secondly, defendant is diagnosed with Asperger's Syndrome which is a diagnosis of Autism Spectrum Disorder (ASD). As such, he has great difficulty perceiving and understanding social situations and social cues. Defendant will live in an environment of heightened tensions and potentially surrounded by aggressive and violent inmates who seek only the thinnest of excuses to inflict violence on others. Given his disorder, the likelihood of a perceived social slight to another inmate means that it is much more likely Defendant will be victimized by fellow inmates. In addition, given his physically frail state, he will be completely unable to defend himself.

Downward departures have been granted based upon a defendant's extreme vulnerability in prison. See, e.g., <u>United States v. Gonzalez</u>, 945 F.2d 525 (2d Cir. 1991);(19 year-old defendant had a small build and feminine looks, which made him appear only 14 years-old); <u>United States v. Lara</u>, 905 F.2d 599 (2d Cir. 1990) (bisexual orientation, along with his immature and fragile appearance and pre-sentence threats from inmates); <u>United States v. Blarek</u>, 7 F.Supp.2d 192, 211-12 (E.D.N.Y. 1998)(highly public nature of the case, along with homosexual defendant's demeanor and build led to a heightened and unique vulnerability of abuse in prison justifying a departure); <u>United States v. Ruff</u>, 998 F.Supp. 1351, 1359 (M.D. Ala. 1998)(district court departed based upon a defendant's small build, feminine appearance, and a history of sexual abuse in prison). Departures on this basis are admittedly rare.

OTHER CONSIDERATIONS

Mr. Flint's history and characteristics as a individual, along with other factors set forth in 18 U.S.C. §3553(a), provide a strong support for this court to impose a sentence that accounts for the underlying offense as well as Mr. Flint's personal characteristics and in his particular case, his disability.

This is an unusual matter in that Mr. Flint is currently serving a sentence on an Illinois case for which this court will need to make a determination of whether some, all or none of the sentence in the instant matter will be serve consecutively. Defense argues that the entirely of the sentence in the instant case should be served entirely concurrently with the Livingston County matter.

People v. Dakota Flint, Livingston County Case nos. 20-CF-162 and 21-CF-6.

Following his arrest on the instant matter, Defendant was interviewed by members of law enforcement and made admissions concerning suspicions of sexual abuse. Once Mr. Flint made his initial admissions and denials, he warmed to the subject and began admitting to multiple other offenses, none related to the offence charged herein, though occurring concurrently.

Eventually Mr. Flint entered into a fully negotiated plea agreement with the State and entered a guilty plea to Aggravated Criminal Sexual Abuse in 20-CF-162- for a sentence of 5 years IDOC to be served at a rate of 50%. In 21-CF-6 Defendant plead guilty to Predatory Criminal Sexual Assault for a term of 8 years IDOC to be served at 85% and to Aggravated Criminal Sexual Abuse for a term of 5 years IDOC to be served at a rate of 50%. All of the above sentences are ordered to be served consecutively to the others. The total sentence is 18-years and if defendant receives all possible credit for good behavior in IDOC, the total actual aggregate sentence would be approximately 11.5 years from date of sentencing, January 7, 2021.

Defendant was not placed in "custody" in the Livingston County matter until the date of sentencing.

Given the allegations in the Livingston county matter, as well as the allegations of the instant matter, it is an absolute certainty that prior to discharge from the Illinois Department of Corrections, Mr. Flint would be screened for commitment, and very likely committed, under either the Illinois Sexually Violent Persons Commitment Act, 725 ILCS 207 or the Illinois Sexual Dangerous Persons Commitment Act, 725 ILCS 205, prior to his release from the Illinois Department of Corrections.

Therefore, the likelihood of presenting a threat to the community upon his release from BOP is greatly reduced. Defendant will be committed to Department of Human Services for treatment for an indeterminant period until such time as a court would order him released.

Given Mr. Flint's particular needs and disability, the Federal Bureau of Prisons would have a distinct advantage in resources over those available in the Illinois Department of Corrections.

## CONCLUSION

The government is required to seek, and the Court is required to impose a reasonable and moral sentence. In this case, a just sentence is one that is below guidelines and where Dakota can still receive treatment and counseling for his specific condition. Dakota's Diagnosis of Asperger's Syndrome does not shield him from being held responsible for his actions. However, it does justify a reduced sentence. It is abundantly clear that any sentence of incarceration would be greater than necessary to comply with the Section 3553 factors.

WHEREFORE, the Defendant, DAKOTA FLINT, respectfully requests of this Court, for the reasons contained in this Sentencing Memorandum and Motion for Downward Departure and Variance, the following:

A. For a downward variance from his final Sentencing Guideline range and sentence him to a term of 72 months BOP; and

B. That his sentence in this matter be ordered to run 100% concurrently with all Illinois sentences to be followed by a substantial term of supervised release; and

C. For any other relief that the Court deems equitable and just under the circumstances.

/s/ John P. Lonergan
Illinois Bar No. 6212031
Attorney for Defendant
416 Main Street, Suite 927
Peoria, IL 61602
Phone: 309-673-4357
Fax: 309-271-0276
Email: john@johnloneranlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

RONALD HANNA
Assistant U.S. Attorney

/s/ John P. Lonergan
Illinois Bar No. 6212031
Attorney for Defendant
416 Main Street, Suite 927
Peoria, IL 61602
Phone: 309-673-4357
Fax: 309-271-0276
Email: john@johnloneranlaw.com

11